**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
BETH JONES,

                          Plaintiff,

               -against-

COMMISSIONER OF SOCIAL
SECURITY,

                      Defendant.
-----------------------------------------------------------------X

**OPINION & ORDER**

**22-cv-10618 (JW)**

**JENNIFER E. WILLIS, United States Magistrate Judge:**

Plaintiff Beth Jones brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Acting Commissioner of Social Security (the "Commissioner") denying application for disability insurance under Title II of the Social Security Act ("the Act").

Plaintiff moved for judgement on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Dkt. Nos. 16, 17. For the reasons stated below, Plaintiff's motion is **DENIED** and the Commissioner's decision is **AFFIRMED**.

## I. BACKGROUND

Plaintiff Jones ("Ms. Jones" or "Plaintiff") claims a disability due to chronic pain, post-Covid syndrome, and dysautonomia. Dkt. No. 17 at 3 (hereinafter "Pl. Memo"). Ms. Jones seeks review of the SSA administrative decision denying her claim for Social Security disability insurance benefits and "asserts that the

Commissioner's decision is not based on substantial evidence as required by 42 U.S.C. § 405(g)." Id.

### A. Procedural History

On July 16, 2020, Plaintiff filed an application for disability insurance benefits ("DIB") alleging disability since March 28, 2020. R.[1] at 14. The claim was initially denied on January 7, 2021. Id. Upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which took place by telephone on October 6, 2021, in front of ALJ Kieran McCormack. Id. There, Plaintiff amended her alleged onset date to April 17, 2020. Id. In a decision dated October 28, 2021, the ALJ found that Plaintiff's dysautonomia was not severe enough to constitute a disability, and that there were other jobs in the economy Plaintiff could perform at her residual functional capacity level. R. at 17, 26-27. Thus, the ALJ denied Plaintiff's claim. R. at 27. Plaintiff's request for review by the Appeals Council was then denied on October 14, 2022. R. at 5.

Plaintiff subsequently brought this action, contending that (i) the ALJ committed reversible error by classifying the Plaintiff's dysautonomia as a non-severe impairment; (ii) the ALJ's residual functional capacity ("RFC") assessment that Plaintiff can meet the standing and walking demands of light work was unsupported by substantial evidence; and (iii) the ALJ erred in evaluating treating opinion evidence. Pl. Memo at 3. Plaintiff seeks remand for a new decision. Id. at 25.

---

[1] Citations to "R." refer to the Social Security Administration ("SSA") Administrative Record (Dkt. No. 13). Page numbers cited refer to the Record page number, not the ECF page number.

### B. Personal Background

Ms. Jones was 53 years old on the alleged disability onset date. R. at 305.  Ms. Jones has a two-year college education. Id. Her past relevant employment includes 17 years of work as a lab technician for various medical partners. Id.

### C. Plaintiff's Relevant Medical History

Ms. Jones sought treatment on numerous occasions and with different providers for continuing symptoms related to Post-Acute Covid-19 Syndrome, asthma, dysautonomia, lumbar degenerative disc disease, fibromyalgia, chronic fatigue, and intracerebral aneurysm. R. at 305. Her relevant medical history is recounted below.

#### i.    Initial Treatment and Pulmonary Consultation with Dr. Vladu

On April 17, 2020, while receiving medical care for flu-like symptoms, Plaintiff was diagnosed positive for Covid-19. R. at 351. After following up with her primary care provider, Caitlin Lakeman FNP, Plaintiff reported symptoms including sinus pressure, sweats, congestion, and cough. R. at 434. On May 29, 2020, Dr. Sorel Vladu, a pulmonologist, evaluated Ms. Jones for worsening asthma symptoms and started her on medication. R. at 388.  On June 8, 2020, a follow-up with another provider revealed some improvement but a subsequent setback with fatigue and myalgia. R. at 395. Ms. Jones's symptoms were described as intermittent, and she reported that she felt like "a truck hit her." Id.

### ii.   Post-Covid Symptoms – Dr. Vladu and Dr. Jaeger

In July 2020, Ms. Jones continued to experience chest pressure and shortness of breath and attended a number of follow up appointments. R. at 332-337. Dr. Vladu suspected post-Covid issues and ordered a chest CT due to ongoing symptoms. Id. After negative test results, Dr. Vladu was left uncertain about the best course of action and recommended a second opinion. Id.

On September 14, 2020, Ms. Jones reported new symptoms, including "short-term memory loss, muscle cramping, and a hoarse voice," and requested a neurology referral. R. at 356. During her neurology consultation with Dr. David Jaeger on October 19, 2020, Ms. Jones described recent memory issues, such as forgetting simple everyday things like her toothbrush or directions on her regular driving route. R. at 713. Dr. Jaeger's neurological examination was largely normal, and he diagnosed Ms. Jones with "mild memory loss." R. at 717. During the physical examination, tenderness over the maxillary sinuses and a "slow, cautious gait" were noted. R. at 699. Ms. Jones reported facial pressure, a chronic dull headache, and a tendency to bump into walls since her Covid infection. R. at 696. During a follow-up on November 20, 2020, the lab results were essentially normal, and the brain MRI showed "mild chronic microangiopathic findings" that "did not clearly correlate with memory loss." Id. Dr. Jaeger ordered a magnetic resonance angiography ("MRA") of Ms. Jones's head to rule out any neurovascular causes for her symptoms. R. at 696-99.

4

### iii.    Psychological Examination – Dr. Deneen

In November 2020, Dr. Todd Deneen, Psy.D., conducted a psychological examination of Ms. Jones as part of the record. R. 485-88. Dr. Deneen's assessment found that Ms. Jones had "no limitations" in her ability to understand, remember, or "apply simple instructions," use reason and judgment for work-related decisions, interact with supervisors, coworkers, and the public, sustain ordinary routine, "control her behavior," and "be aware of normal hazards and take appropriate actions." R. at 487.  Dr. Deneen's opinion indicated a "mild limitation" in Ms. Jones's ability to understand, remember, and apply complex instructions. R. at 487-88. Dr. Deneen concluded, "claimant's medically determinable impairments could have reasonably been expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are generally not consistent with the evidence of record." R. at 106.

### iv.    Revisiting Primary Care with New Symptoms

Ms. Jones reported various health issues during a primary doctor visit on December 1, 2020, including facial pressure, headache, fatigue, memory loss, imbalance, cough, and shortness of breath. R. at 691-95. Her primary care specialist recommended an ENT specialist follow-up due to chronic facial pressure. Id. In January 2021, Ms. Jones consulted with a rheumatologist to address fatigue, brain fog, and hip pain, and the rheumatologist attributed most symptoms to post-COVID syndrome. R. at 500-504. At a pain management consultation on February 11, 2021,

5

Ms. Jones stated she had not been able to return to work due to widespread pain affecting joints, with various accompanying symptoms such as aching, throbbing, weakness, muscle spasms, balance issues, and difficulty emptying her bladder. R. at 684.

### v.   2020 Disability Determination Explanation – Dr. Walker and Dr. Ghandi

In November and December of 2020, state agency medical consultants Dr. Walker and Dr. Ghandi examined Ms. Jones to produce an initial Disability Determination Explanation. R. at 99-111. In assessing Ms. Jones' mental capacity, Dr. Walker noted that her "Intellectual functioning was average. Insight and judgment were good." R. at 99. Describing her physical ability, Dr. Ghandi remarked that Ms. Jones could sit or stand for 6 hours in an 8-hour workday and "frequently" lift 25 pounds. R. at 107. The report stated that Ms. Jones was not disabled. R. at 111.

### vi.   2021 Disability Determination Explanation – Dr. Siddiqui and Dr. Hoffman

In April 2021, state agency medical consultants Dr. Siddiqui and Dr. Hoffman reviewed Ms. Jones medical records from 2020 and 2021 and examined Ms. Jones in order to produce a Disability Determination Explanation concerning the reconsideration of Ms. Jones' claim. R. at 114-26. Regarding mental impairments, Dr. Hoffman noted that Ms. Jones' "attention and concentration were intact," and her "[r]ecent and remote memory skills were intact." R. at 121-22. Regarding physical impairments, Dr. Siddiqui also noted that Ms. Jones could stand or walk for 6 hours in an 8-hour workday, could frequently lift or carry 10 pounds, and could occasionally

lift or carry 20 pounds. R. at 124. Dr. Siddiqui found that Ms. Jones did have some "environmental limitations" and should "[a]void concentrated exposure" to "[f]umes, odors, dusts, gases, poor ventilation, etc." R. at 125.  Dr. Siddiqui determined that Ms. Jones was not disabled and was able to perform light work. R. at 129.

###### vii.   **Dysautonomia Treatment -- Dr. Hinnant and Dr. Titano**

On May 10, 2021, Ms. Jones had her initial appointment with Dr. Lee Hinnant, a functional medicine and post-Covid specialist at Mt. Sinai. R. at 792. There, Ms. Jones discussed recent orthopedic testing, joint and back pains, and symptoms of fatigue. Id. Dr. Hinnant recommended a "rehab protocol," which included using compression stockings, supplements, electrolytes, and a low-histamine diet. R. at 795. During a follow-up on June 21, 2021, Ms. Jones reported some relief of pain symptoms following an epidural steroid injection and low-dose naltrexone. R. at 800-03. She was diagnosed with chronic fatigue and fibromyalgia by a second rheumatologist, secondary to her post-Covid syndrome. R. at 806. Dr. Hinnant's treatment plan included continuing the dysautonomia protocol and referring her to cardiology for rehab clearance. R. at 809.

On August 10, 2021, Ms. Jones returned to Dr. Hinnant, reporting advice from her cardiologist to continue wearing compression stockings and drinking electrolytes. R. at 792. Ms. Jones also mentioned a symptom relapse after a spinal epidural steroid injection, including pain in her hands and back, as well as eye and balance issues. Id. Dr. Hinnant provided an opinion stating that Ms. Jones had significant limitations

in various areas due to her medical conditions. Specifically, he noted that she had a "marked" limitation in her ability to carry out daily activities, social interactions, and maintain focus and concentration. Id.

On September 2, 2021, Ms. Jones underwent tilt table testing to assess her dysautonomia and related diagnoses. R. at 767-70. The results indicated orthostasis or vasovagal issues. Id. Ms. Jones discussed these results with Dr. Ruwanthi Titano, a cardiology assistant professor at Mount Sinai, during a telehealth appointment on September 14, 2021. Id. Ms. Jones also reported increased headaches with the medication midodrine, ongoing lightheadedness, fatigue, heavy legs, and tiredness. Id. Dr. Titano diagnosed her with dysautonomia "secondary to Covid" and recommended various treatment strategies, including lifestyle changes, compression stockings, and medication. Id.

**D. The Hearing**

On October 6, 2021, Plaintiff appeared and testified at a hearing, conducted over the telephone, before ALJ Kieran McCormack. R. at 38. Richard Hall testified as a vocational expert ("VE"). Id.

**i.   Plaintiff's Testimony**

Plaintiff testified that she had previously worked as a lab technician for various medical partners for about 17 years, which required her to be on her feet all day and lift up to 30 pounds.  R. at 46-48.

Plaintiff then testified that she had Covid-19 in April 2020. R. at 54. The ALJ asked Plaintiff to describe her symptoms at the time, and she responded that she had experienced "off-and-on fatigue," burning sensations in her chest, and chills. R. at 51. The ALJ then inquired about Plaintiff's post-Covid syndrome diagnosis and any symptoms since the initial onset. R. at 52. Plaintiff said she still experienced fatigue, had balance issues that cause her to "weeble and wobble all day long," struggled with memory loss and lightheadedness, and had joint pain. Id.

The ALJ then asked Plaintiff about being diagnosed with chronic pain syndrome and myalgia, specifically asking her to speak about where and how the pain affected her. R. at 53. Plaintiff elaborated on her joint pain, how she felt "very weak in the legs," and how the stairs felt as if they were her "worst enemy." Id.

When asked about her ability to walk and move around, Plaintiff responded that she could not stand or walk for more than 30 minutes "without the need for a break." R. at 53-54. She explained that she felt that her "bones aren't holding...not holding [her] body upright." R. at 53. Plaintiff is able to drive up to five minutes if going to the doctor or the grocery store, but her husband accompanies her for longer trips. R. at 59-60.

The ALJ asked if she had received injections on her lower back to help with the pain, and Plaintiff responded that the injections helped "take the edge off for a couple weeks," but that the pain subsequently returned. R. at 55. Plaintiff also

9

testified that she had begun treatment for back problems with Dr. Weinstein in May 2021. R. at 76.

Plaintiff testified that she takes pain medication and has frequent headaches and trouble remembering things. R. at 55. When asked about what medication she takes to treat her various symptoms, Plaintiff stated that she takes "a zillion things." R. at 52.  She explained that her husband takes care of paying the bills. R. at 59.

Plaintiff testified that she currently has headaches about "two times a week," and that they sometimes last "all day long" and "come out of nowhere." R. at 55-56. Plaintiff further explained that she uses an inhaler every day for her asthma. R. at 57. Plaintiff said she showers every day, but usually must rest after that for "up to an hour." R. at 63. Plaintiff claimed she has trouble paying attention to television programming and concentrating while reading. Id.

When asked about her fatigue, Plaintiff testified that she constantly felt "tired and wiped out." R. at 69.

### ii.  VE Testimony

When the ALJ asked the VE to classify Plaintiff's past work, the VE classified the Lab Technician job as "light" per the Dictionary of Occupational Titles ("DOT"), but performed at a "medium" level. R. at 44, 47.

The ALJ then posed her first hypothetical, asking the VE to assume a theoretical person of the same profile as the Plaintiff, including the same residual functional capacity. R. at 79. The ALJ asked the VE to assume this person could

10

perform a full range of light work with the following additional limitations: the individual could not work at jobs containing concentrated exposure to airborne irritants, unprotected heights, unprotected machinery, or excessive noise. Id. The VE stated that such a person would be able to perform this work as described.  Id.

The ALJ then asked the VE to assume that the work was "sedentary" instead of light, with all the remaining limitations from the previous hypothetical. R. at 80. The ALJ then asked the VE if there were transferrable skills from the Plaintiff's past relevant work to the second hypothetical. Id. The VE stated that there were transferrable skills including speaking, active listening, reading comprehension, writing, time management, and information gathering. R. at 80-81.  The VE then identified the following available jobs: cashier, data clerk, and clerk. R. at 82.

The ALJ asked the VE additional hypothetical questions which were not adopted in the ALJ's RFC assessment.  R. at 83-84.

**E. The ALJ's Decision**

ALJ Kieran McCormack issued a decision on October 28, 2021, denying Plaintiff's claims. R. at 14-27. Considering both severe and non-severe impairments, the ALJ concluded that Plaintiff Jones's conditions, including claims of mental impairment, did not impose significant limitations on the ability to engage in work-related activities. Id. The ALJ conducted this analysis through five steps.

At step one of the analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity ("SGA") since April 17, 2020. R. at 16.

11

At step two, the ALJ found that Plaintiff suffered from the following severe ailments: chronic pain syndrome, myalgia, lumbar stenosis, lumbar degenerative disc disease, post-Covid syndrome, asthma, and headaches. R. at 17. The ALJ also found that Plaintiff had non-severe impairments including thyroid nodule, hyperlipidemia, kidney stones, diabetes insipidus, hoarseness, and dysautonomia. Id. The ALJ contended that though the record indicated these additional non-severe impairments, they were characterized by slight abnormalities with no more than minimal impact on basic work activities. Id. The durational requirement was considered in evaluating these impairments, highlighting conditions such as thyroid nodule, hyperlipidemia, kidney stones, diabetes insipidus, hoarseness, and dysautonomia. Id. However, the ALJ concluded that the absence of "consistent" medical treatment for more than 12 months and "normal physical examinations" rendered these conditions non-severe. Id.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 4-4. Subpart P. Appendix 1. R. at 19.; 20 C.F.R. Ch. III, Pt. 404, Subpt. P. App. 1, Refs & Annos. Here, the ALJ considered all medically determinable impairments, both severe and non-severe as listed above, in assessing the claimant's residual functional capacity ("RFC"). Id. The ALJ determined that Plaintiff had the RFC to perform "light" work; lift and/or carry up to 20 pounds occasionally and 10 pounds frequently; and stand and/or walk for up to six

hours in an eight-hour workday. R. at 26. Additionally, the Plaintiff's medically determinable claim of an unspecified memory loss disorder was deemed non-severe based on the following considerations: ability to understand and apply information, interact with others, concentrate, and manage oneself. Id. The ALJ further determined that Plaintiff could not perform work activity that involved concentrated exposure to pulmonary irritants and/or workplace hazards, unprotected heights and/or machinery, or excessive noise. Id.

At step four, the ALJ found that the Plaintiff could perform past relevant work as a lab technician as it is generally performed at a light exertion level. R. at 26.

In making these determinations, the ALJ assessed the persuasiveness of the medical opinions contained in the Record. R. at 23. First, the ALJ found the consultative psychological examiner Todd Deneen "very persuasive" because his findings were supported by his examination in which the Plaintiff "exhibited completely normal memory and concentration skills." Id. The ALJ also found state agency consultants Dr. Walker and Dr. Hoffman to be persuasive as their finds were supported by relevant findings in the record and consistent with the findings of Dr. Deneen. R. at 24. Furthermore, the ALJ noted that Dr. Siddiqui was also persuasive because his finding that Plaintiff could "perform work at the light exertional level" was supported by relevant findings in the record and consistent with the determinations of other "objective physical examinations." Id.

However, the ALJ noted that Dr. Ghandi was only somewhat persuasive because his assessment of Plaintiff's ability to lift was not aligned with her history of back pain, but the ALJ still found Dr. Ghandi's conclusion that Plaintiff was not disabled to be consistent with the record. R. at 25 Finally, the ALJ did not find Dr. Hinnat to be persuasive. R. at 25. The ALJ noted that Dr. Hinnat documented the Plaintiff as "fully alert" with "normal musculoskeletal activity," but "opined the claimant was incapable of even low stress work, [and] would be off task more than 25% of a workday," Id. Thus, the ALJ determined, "Dr. Hinnant's opinions are neither supported by his own records, nor consistent with the longitudinal evidence, in forming." Id.

Based on the above, the ALJ concluded that Plaintiff was not disabled as defined in the Act. Id.

## II. LEGAL STANDARD

### A. Standard of Review

In reviewing a final decision of the SSA, "[t]he district court must determine whether the Commissioner's final decision applied the correct legal standards and whether the decision is supported by substantial evidence." Intonato v. Colvin, No. 13-CV-3426 (JLC), 2014 WL 3893288, at *6 (S.D.N.Y. Aug. 7, 2014)(citing Butts v. Barnhart, 388 F.3d 377, 384 (2d Cir. 2004)). The reviewing court defers to the Commissioner's factual findings, which are considered conclusive if supported by substantial evidence. See 42 U.S.C. § 405(g).

"Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Lamay v. Commissioner of Soc. Sec., 562 F.3d 503, 507 (2d Cir. 2009) (internal quotations omitted) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "In determining whether the agency's findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted). If a reviewing court finds that there is substantial evidence supporting the Commissioner's decision, it must be upheld. See Perez v. Chater, 77 F.3d 41,46 (2d Cir. 1996).

"On the basis of this review, the court may 'enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.'" Intonato v. Colvin, 2014 WL 3893288, at *6 (quoting 42 U.S.C. § 405(g)). "When there are gaps in the administrative record or the ALJ has applied an improper legal standard," or when the ALJ's rationale is unclear, remand is warranted "for further development of the evidence" or for an explanation of the ALJ's reasoning. Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996)(internal quotations omitted). Additionally, an ALJ's "[f]ailure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to

the applicable regulations." <u>Kohler v. Astrue</u>, 546 F. 3d 260,265 (2d Cir. 2008) (internal citations omitted).

### B. Five-Step Sequential Evaluation Process

Under the Social Security Act, a claimant is disabled if they lack the ability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." <u>Id.</u> at § 423(d)(2)(A).

A claimant's eligibility for disability benefits is evaluated pursuant to a five-step sequential analysis:

1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.
2. If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.
3. If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.

4.  If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.

5.  If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform. See Rolon v. Commissioner of Soc. Sec., 994 F. Supp. 2d 496, 503 (S.D.N.Y. 2014)(citing Shaw v. Chater, 221 F.3d 126, 132 (2d Cir.2000)); see also 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

The claimant bears the burden of proof as to the first four steps; the burden shifts to the Commissioner at step five. See Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003). At step five, the Commissioner determines whether claimant can perform work that exists in significant numbers in the national economy. See Butts v. Barnhart, 416 F.3d 101, 103 (2d Cir. 2005); 20 C.F.R. § 404.1560(c)(2).

## III. DISCUSSION

Plaintiff contends that the ALJ erred as a matter of law determining that she is not disabled and therefore asserts the ALJ's decision should be reversed. Pl. Memo at 15. In support, Plaintiff first argues that the ALJ committed a reversible error in classifying her dysautonomia impairment as non-severe. Pl. Memo at 11. Second, Plaintiff contends that the ALJ's assessment that the Plaintiff can meet the standing and postural demands of her past work is not supported by substantial evidence because the ALJ "fail[ed] to account for her well-documented standing limitations." Pl. Memo at 17. Finally, Plaintiff challenges the ALJ's consideration of the opinion evidence, claiming that the ALJ erred in "finding the RFC opinions of two non-examining medical experts more persuasive than [the] treating physician opinion."

17

Pl. Memo at 23. For these reasons, Plaintiff argues that the ALJ plainly erred as a matter of law when she determined that the Plaintiff is not disabled, so the case should be reversed and remanded. Id.

### A. Whether the ALJ Committed a Reversible Step Two Error in Classifying Plaintiff's Dysautonomia as a Non-Severe Impairment

#### i.   Plaintiff's Argument

Plaintiff argues that the ALJ committed an error when she classified Plaintiff's dysautonomia as a non-severe impairment during step two of the five-step inquiry. Pl. Memo at 11. In support of this, Plaintiff alleges that the finding that the Plaintiff was not treated "consistently" for dysautonomia was not supported by substantial evidence, and that "while proving an impairment has lasted at least 12 months is a sufficient condition to satisfy the durational requirement of a severe impairment, it is not a necessary condition. If the impairment is 'expected' to last for a continuous period of 12 months, that would also satisfy the duration requirement." Pl. Memo at 12. Further, Plaintiff claims that the ALJ's non-severe classification of Plaintiff's dysautonomia was not harmless, and thus qualifies for reversal. Pl. Memo at 16.

#### ii.   Defendant's Argument

In response, Defendant argues that the Plaintiff's impairment causes "no more than 'mild' limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities." Dkt. No. 16 at 16 (hereinafter "Opp."). Defendant stresses that the ALJ did not overlook Plaintiff's complaints of several symptoms

throughout the relevant period in finding that Plaintiff's dysautonomia did not "significantly limit Plaintiff's ability to perform basic work activities." Opp. at 15-16.

First, Defendant claims that "while Plaintiff cites to some of her *symptoms* to argue that her dysautonomia should have been found severe, she fails to show how her symptoms caused functional limitations that interfered with her ability to perform basic work activities." Opp. at 16. Second, Defendant argues that "Plaintiff has not established that her diagnosis of dysautonomia caused more than minimal limitations in *her* ability to stand." Opp. at 17. Third, Defendant reasons that "Plaintiff has not shown that the ALJ incorrectly cited the medical findings in assessing the severity of dysautonomia," and that the ALJ "properly considered the clinical findings" and these "findings of normal ambulation and coordination are directly relevant to assessing the effects of complaints of dizziness and imbalance." Opp. at 17.

### iii.   Analysis

Under 20 C.F.R. § 404.1522, "[a]n impairment or combination of impairments is not severe if it does not significantly limit physical or mental ability to do basic work activity," relating to the ability to perform jobs such as walking, sitting, standing, etc. 20 C.F.R. § 404.1522; see also Bowen v. Yuckert, 482 U.S. 137, 153 (1987); Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir. 1995). In determining severity

at step 2, "we will consider an individual's symptoms and functional limitations." SSR 16-3p, 81 FR 14166-01.[2]

Here, the ALJ referred to Plaintiff's treatment notes in finding that although Plaintiff complained of some of these symptoms at various appointments, "medical records do not show a history of medical treatment for these conditions, consistently, for more than a 12-month period. To the contrary, objective physical examinations repeatedly documented the claimant with grossly normal range of motion and muscle strength throughout her musculoskeletal system, normal gait and station, normal ambulation, normal sensation, normal fine motor coordination, and no signs of acute distress." R. at 17. The ALJ then determined that Plaintiff's "allegations of disabling intensity, persistence and limiting effects of the claimant's symptoms [were] not entirely consistent with the objective medical evidence and other evidence in the record." R. at 21. Because the ALJ based this determination on the functional limitations opined on by numerous doctors in the record, it cannot be said that the ALJ committed a legal error by classifying Plaintiff's dysautonomia as a non-severe impairment.

Therefore, this Court finds that the ALJ did not err in the non-severe classification of Plaintiff's dysautonomia.

---

[2] Plaintiff cites SSR 96-3p for the legal standard for determining severity. Pl. Memo at 11. The Court notes that SSR 96-3 was rescinded as duplicative in 2018. See Soc. Sec. Rulings (Ssrs) 96-3p & 96-4p; Rescission of Ssrs 96-3p & 96-4p, SSR 96-3P (S.S.A. June 14, 2018).

**B. Whether Substantial Evidence Supported the ALJ's RFC Findings.**

    **i.    Plaintiff's Argument**

Plaintiff contends that the ALJ's step four RFC assessment that the Plaintiff can meet the standing and walking demands of light work is not supported by substantial evidence, and that the ALJ "rendered an incomplete RFC assessment." Pl. Memo at 17. In support of this, Plaintiff argues that the ALJ failed to consider Plaintiff's own assessment of her symptoms over time, their variability and frequency, and their impact on her daily activities. Pl. Memo at 22. Therefore, the ALJ engaged in "cherry picking" of "relevant evidence," and committed an error by "repeatedly referencing normal *physical exam* findings as conclusive evidence against the Plaintiff's consistent reports she had difficulty with walking and standing for long periods." Pl. Memo at 20-21.

   Plaintiff asserts that by "excluding any direct discussion of this limitation in the decision," the ALJ had "improperly dismissed" a functional limitation that was supported by "treating physician opinion evidence, objective evidence, numerous treatment notes, and the Plaintiff's testimony." Pl. Memo at 17. Plaintiff further emphasizes that such "myopic focus on objective findings is not sufficient, because other non-measured symptoms like pain, fatigue, and poor blood circulation can also impact a person's ability to stand or walk." Pl. Memo at 18.

### ii.   Defendant's Response

Defendant counters that the clinical findings throughout the record "did not substantiate many of Plaintiff's allegations and supported a finding that Plaintiff could perform a range of light work." Opp. At 19. Hence, Defendant claims, the record supports a finding that Plaintiff can perform a light range of work: citing clinical findings, Dr. Siddiqui's report, and the Plaintiff's reported activities, to state that the Plaintiff "can lift and/or carry up to 20 pounds occasionally and 10 pounds frequently; stand and/or walk for up to six hours in an eight-hour workday." Id.

Further, Defendant argues that Plaintiff has not shown the RFC was unsupported. Opp. At 21. Defendant highlights the ALJ's acknowledgement of Plaintiff's post-Covid symptomology, findings of normal gait throughout the record, and the Plaintiff's own statements about what she can and cannot do, such as prepare meals and drive. Opp. At 21-23.

### iii.   Analysis

A claimant's subjective complaints of pain and limitation "must be thoroughly considered in calculating the [RFC] of a claimant." Meadors v. Astrue, 370 F. App'x 179, 183 (2d Cir. 2010) (citation omitted); see also 20 C.F.R. § 416.929. However, "the ALJ is … not required to accept the claimant's subjective complaints without question." Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (citations omitted). Rather, the ALJ "may exercise discretion in weighing the credibility of the claimant's testimony in light of other evidence in the record." Id. (citation omitted).

Here, Plaintiff testified at the hearing about her fatigue, back pain, and headaches at the hearing. R. at 55-63. Plaintiff also presented medical records from treating physicians, including Dr. Hinnat who noted that Plaintiff was "incapable of even 'low stress' jobs." R. at 875.

However, the ALJ was entitled to weigh all the medical evidence of record holistically. Trepanier v. Comm'r of Soc. Sec. Admin., 752 F.App'x 75, 79 (2d Cir. 2018). The ALJ considered the notes from various "objective physical examinations" and noted that they "repeatedly documented the claimant with grossly normal range of motion and muscle strength throughout her musculoskeletal system, normal gait and station, normal ambulation, normal sensation, normal fine motor coordination, and no signs of acute distress." R. at 24. The ALJ also considered Plaintiff's testimony regarding her pain and fatigue, but noted that Plaintiff stated "that she could perform household chores including laundry cleaning and meal preparation…could walk outdoors and independently operate a motor vehicle…shop in stores." R. at 21. Moreover, the ALJ did not ignore Dr. Hinnat's findings but specifically noted that Dr. Hinnat was not persuasive. See Christine M. v. Comm'r of Soc. Sec., No. 1:20-CV-01226-MJR, 2022 WL 130900, at *8 (W.D.N.Y. Jan. 14, 2022)("Although plaintiff argues that the evidence warranted additional RFC restrictions for migraines, she has not supported her conclusion with reference to any evidence that the ALJ overlooked or improperly discredited.").

An ALJ has the discretion to discount a claimant's subjective complaints where, as here, those complaints can be considered inconsistent with the overall clinical assessments and treatment notes. Kuchenmeister v. Berryhill, No. 16 CIV. 7975 (HBP), 2018 WL 526547, at *19 (S.D.N.Y. Jan. 19, 2018). Because the ALJ was not required to rely on merely the Plaintiff's subjective testimony about her ability to work, Plaintiff failed to demonstrate that she required a more restrictive RFC than the ALJ determined. Thus, the Court finds that ALJ did not err in her RFC determination.

### C. Whether the ALJ Erred in Weighing a Treating Specialist Opinion

#### i.    Plaintiff's Argument

Plaintiff further challenges how the ALJ considered opinion evidence, claiming that the "ALJ committed this precise error by finding the RFC opinions of two non-examining medical experts more persuasive than [the] treating physician opinion." Pl. Memo at 23. Plaintiff contends that it was improper for the ALJ to rely on the findings of non-examining consultant Dr. Siddiqui over the opinion of treating source Dr. Hinnant. Pl. Memo at 23. The ALJ, Plaintiff insists, was obliged to provide "'good reasons' for dismissing the only medical opinion that addressed Ms. Jones's non-exertional limitations associated with post-Covid syndrome and dysautonomia." Id. Plaintiff cites the March 2021 lumbar spine MRI study and the September 2021 tilt table test and formal dysautonomia diagnosis as examples. Id. Further, Plaintiff

24

argues that the ALJ "committed legal error by failing to address how often Plaintiff would be off task in a typical workday." Pl. Memo at 24.

### ii.   Defendant's Argument

Defendant responds by claiming the Plaintiff's challenges are "meritless." Opp. at 25. First, Defendant states that Plaintiff cites to the wrong set of regulations, that in evaluating claims filed after March 27, 2017, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 404.1520c(a). Defendant therefore contends that the ALJ took into consideration relevant evidence, and that the non-examining consultant's assessment was "well-supported and consistent with the benign clinical findings throughout the record," whereas the treating source's opinion was "unsupported by his treatment notes and inconsistent with the largely normal clinical findings."  Opp. at 27. Lastly, Defendant states that the ALJ "explicitly addressed Plaintiff's ability to concentrate and remain on task" by finding that Dr. Hinnant's notes showed "normal cognition," as well as Dr. Deneen's opinion that Plaintiff had no more than mild limitations sustaining concentration and pace." Opp. at 28.

### iii.   Analysis

"Regardless of its source, the ALJ must evaluate every medical opinion in determining whether a claimant is disabled under the [Social Security] Act." Pena ex rel. E.R. v. Astrue, No. 11-CV-1787 (KAM), 2013 WL 1210932, at *14 (E.D.N.Y. Mar.

25, 2013) (citing 20 C.F.R. §§ 404.1527(c), 416.927(d) (2020)) (internal quotation marks omitted). The ALJ no longer gives "specific evidentiary weight to medical opinions," but rather considers all medical opinions and "evaluate[s] their persuasiveness" based on supportability, consistency, relationship with the claimant, specialization, and other factors. See 20 C.F.R. § 404.1520c (a), (b)(2). The ALJ is required to "articulate how [he or she] considered the medical opinions" and state "how persuasive" he or she finds each opinion, with a specific explanation provided as to the consistency and supportability factors. See 20 C.F.R. § 404.1520c (b)(2); Navedo v. Kijakazi, 616 F. Supp. 3d 332 (S.D.N.Y. 2022).

Consistency is "the extent to which an opinion or finding is consistent with evidence from other medical sources and non-medical sources." Dany Z. v. Saul, 531 F. Supp. 3d 871, 882 (D. Vt. 2021)(citing 20 C.F.R. § 416.920c(c)(2)). The "more consistent a medical opinion" is with "evidence from other medical sources and nonmedical sources," the "more persuasive the medical opinion" will be. See 20 C.F.R. § 404.1520(c)(2).

Supportability is "the extent to which an opinion or finding is supported by relevant objective medical evidence and the medical source's supporting explanations." Dany Z., 531 F. Supp. 3d at 881. "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the

26

more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520 (c)(1), 416.920c(c)(1).

Here, the ALJ clearly considered all relevant medical evidence as is evident in his discussion of the treating opinion notes, and assessment of their inconsistency with objective evidence. Hence, the ALJ did not err in her consideration of all relevant evidence.

### D. Whether the Court Should Reverse and Remand

Plaintiff requests a remand on the basis that the ALJ's decision is unsupported by substantial evidence.  Pl. Memo. at 13.  Defendant argues that substantial evidence supports the ALJ's decision, and that the decision is free from legal error. Opp. at 16.

Remand for administrative proceedings is appropriate where "there are gaps in the administrative record or the ALJ has applied an improper legal standard." Rosa, 168 F.3d at 82-83.  But "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a claim for benefits." Id. at 79 n.5.  Here, there are no obvious gaps in the record and the ALJ possessed substantial medical records, so the ALJ was not obligated to seek further information.

The ALJ based her opinion on substantial evidence and did not commit legal error.  Therefore, remand for further proceedings is not warranted.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion is **DENIED** and the Commissioner's decision is **AFFIRMED**.

SO ORDERED.

DATED:     New York, New York
           March 21, 2024

_Jennifer E. Willis_
JENNIFER E. WILLIS
United States Magistrate Judge